**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT BECKLEY**

UNITED STATES OF AMERICA

v.

CRIMINAL ACTION NO. 5:13-cr-00319

THOMAS GLENN SPECK

**MEMORANDUM OPINION AND ORDER**

Pending is Defendant Thomas Glenn Speck's pro se Motion to Modify Terms of Supervised Release [Doc. 46], filed July 17, 2020, to which the Government responded in opposition on July 28, 2020. [Doc. 51]. Mr. Speck replied on August 3, 2020. [Doc. 52].

**I.**

After pleading guilty to the unlawful possession of a firearm, Mr. Speck was sentenced to a forty-eight (48) month term of imprisonment on June 4, 2014. On August 3, 2018, Mr. Speck began serving his three-year term of supervised release. On August 22, 2019, Mr. Speck's supervised release was revoked based on uncontested allegations of domestic violence. [*See* Doc. 43]. Mr. Speck was sentenced to twelve (12) months imprisonment, with a twenty-four (24) month term of supervised release to follow. [*Id.*]. As a special condition of his supervised release, Mr. Speck was ordered to serve the first six (6) months of supervision on community confinement in a half-way house. [*Id.*]. Mr. Speck began serving his twenty-four (24) month term of supervised release on July 13, 2020 and began his six (6) month term of community confinement at Dismas Charities Halfway House in St. Albans.

Mr. Speck now moves the Court to modify his term of supervised release pursuant to 18 U.S.C. § 3583(e)(2). Mr. Speck contends that he was ordered to participate in services such as anger management and alcohol abuse treatment during his time at Dismas. [Doc. 46]. Mr. Speck asserts, however, that these services are extremely limited given the pandemic, and he is unable to seek employment. [*Id.*]. Mr. Speck further contends that the open dorm structure at Dismas is unsafe "pursuant to the guidelines set forth by the United States Center for Disease Control," and social distancing is impossible. [*Id.* at 1]. Accordingly, Mr. Speck requests that his supervised release be modified to allow him to serve the remainder of his community confinement term at his home. Mr. Speck contends that he will seek employment, attend Alcoholics Anonymous meetings, and request a referral for anger management classes in his community. [*Id.*]. He also asserts that his United States Probation Officer ("USPO") informed him that she would not oppose his modification request. [*Id.*].

On July 28, 2020, the Government responded in opposition to Mr. Speck's motion. The Government contends that it spoke with James Sands, the Director of Dismas on July 27, 2020. [Doc. 51 at 2]. Mr. Sands stated that while Dismas's operations have been affected by the pandemic, some residents are working outside jobs and participating in outside counseling. [*Id.*]. Furthermore, Mr. Sands indicated that Dismas's organization has worked diligently to assure that it is providing a safe environment to its residents in all thirty-seven (37) of its facilities during the pandemic. [*Id.*]. Specifically, Mr. Sands stated the following:

> that no staff members or residents have tested positive at his facility; that new residents are quarantined; that all residents are provided masks and are required to wear them in common areas; that efforts are made to observe social distancing; that residents sleep on alternating top and bottom bunks such that they are at least six feet apart when in their bunks; that residents' temperatures are taken every day; that a fogger is used to disinfect the premises every night; that no outsiders come into the facility other than essential vendors; and that residents are not given home passes during this time.

[Doc. 51 at 2-3]. Based on Mr. Sands' assertions, the Government contends that Mr. Speck "has failed to show that he should be released to his home due to the pandemic." [*Id.* at 3].

Moreover, the Government contends that if the Court were to grant Mr. Speck's modification request, he would be returning home to live with his wife, the alleged victim of the domestic violence allegations that resulted in the revocation of his first term of supervised release. The Government asserts that the half-way house term remains a reasonable and appropriate requirement. Additionally, the Government contends that Mr. Speck's previous violent conduct, extensive criminal history, and prior revocation "supports a conclusion that an incremental release process from prison to a half-way house to home is appropriate in this case." [*Id.*].

Lastly, contrary to Mr. Speck's assertion that his USPO informed him that she would not oppose his modification request, the Government contends that the USPO does, in fact, oppose the request. The Government proffers that it spoke with the USPO who advised that she did not inform Mr. Speck that she would not oppose his motion, but told Mr. Speck that it was the Court's decision and that she would comply with such decision. Accordingly, the Government requests that Mr. Speck's modification request be denied.

On August 3, 2020, Mr. Speck replied. Mr. Speck contends that while outside services are not impossible to obtain at Dismas, safety is still "a major concern," given that he would have to use public transportation. [Doc. 52 at 1]. He asserts that "there is no social distancing on the city bus, increasing [his] risk of becoming infected and infecting others." [*Id.*]. Mr. Speck contends that if he were home, his family members would help him travel to his services. Mr. Speck further asserts that Dismas will not allow him to "go out and seek employment," but if he is able to obtain employment via phone, he would then be permitted to work. [*Id.* at 2]. Mr. Speck contends that Dismas has required him to obtain employment within twenty-one (21) days of his

arrival; however, this is difficult given that he is a felon and that "face to face contact is essential in humanizing a person recently released from prison." [*Id.*]. Given this requirement, Mr. Speck asserts that he is concerned about achieving employment within the time frame allotted due to the current circumstances.

As to the safety measures being taken at Dismas, Mr. Speck contends that staff and residents continuously come in and out of the facility, not just essential vendors, and while masks are provided, wearing them is not enforced. He further contends that no disinfectant foggers are being used nightly, he was not quarantined upon his arrival, and there is no social distancing in the dormitories. Specifically, Mr. Speck asserts that the bunks are three and a half feet apart, not six feet apart, and "nearly every bunk has a resident." [*Id.*] Mr. Speck contends that his assertions could "easily be checked by inspection." [*Id.*].

Lastly, Mr. Speck contends that the Government's statements regarding his past domestic violence allegations "are just that, allegations." [*Id.*]. He asserts that he was never convicted of domestic violence and did not contest the allegations at his revocation hearing because of an ongoing state case, which was dismissed two days after the hearing. He contends that his wife "fully supports [his] rehabilitation and [they] are working together towards his homecoming." [*Id.*].  As to his criminal history, Mr. Speck asserts that he understands that this is an issue and does not intend to minimize his criminal activity, but that he has worked hard at his rehabilitation and continues to do so. He contends that he is concerned and afraid given the increasing infection rate of COVID-19 in West Virginia. Mr. Speck further contends that he does not feel as if his prior supervised release violation "warrants the serious health risk that is currently being imposed upon [him]." *Id.* Accordingly, he asserts that his modification request should be granted.

## II.

Pursuant to 18 U.S.C. § 3583(e)(2)[1], after considering the factors set forth in section 3553(a), the Court may

> modify, reduce, or enlarge the conditions of supervised release at any time prior to the expiration or termination of the term of supervised release, pursuant to the Federal Rules of Criminal Procedure relating to the modification of . . . the provisions applicable to the initial setting of the terms and conditions of post-release supervision.

Here, upon careful consideration of the applicable § 3553(a) factors, the Court concludes that the requested modification of Mr. Speck's supervised release is unwarranted. Given Mr. Speck's extensive criminal history, previous violent conduct, and the previous breach of the Court's trust, the Court agrees that the incremental release process from prison to a half-way house remains appropriate and best serves the community and Mr. Speck.

Further, contrary to Mr. Speck's assertion, the Court received correspondence from USPO Richmond indicating that she did not inform Mr. Speck that she would not oppose his motion. Instead, she informed Mr. Speck that she would do as directed by the Court. Moreover, USPO Richmond informed the Court that she believed Mr. Speck is as safe at Dismas as he would be in the community. Indeed, no staff member or resident has tested positive for the virus at Mr. Speck's facility, and it appears from Mr. Speck's assertions that new residents are now being quarantined upon their arrival.[2] While Mr. Speck asserts that staff members and residents are

---

[1] In an abundance of caution, the Court additionally considered Mr. Speck's motion as seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A). He falls far short of the mark under that analysis as well.

[2] Mr. Speck contends that *initially*, no new residents were quarantined "until a name mix up within the B.O.P. caused Dismas Charities to believe that a resident had tested positive for COVID-19." (emphasis added). The Court interprets this assertion as Dismas is now, in fact, quarantining new residents admitted to the facility.

traveling in and out of the facility, it appears that residents' temperatures are being taken every day to help monitor symptoms of the virus. Moreover, Mr. Speck has been supplied with a mask, which he can use both at the facility and while traveling via public transportation to help protect him and others from potential exposure. Accordingly, the Court **DENIES** Mr. Speck's Motion to Modify Terms of Supervised Release [**Doc. 46**].

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTERED: August 13, 2020



Frank W. Volk
United States District Judge